694 P.2d 890

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Darrell WHITE, Defendant-Appellant.**

**No. 15040.**

Supreme Court of Idaho.

Jan. 16, 1985.

Larry Ashcraft, Mountain Home, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., P. Mark Thompson, Deputy Atty. Gen., Boise, for plaintiff-respondent.

HUNTLEY, Justice.

On November 18, 1982, appellant Darrell White pled guilty to one count of first degree burglary and was sentenced to a five-year prison term. The trial court retained jurisdiction for 120 days pursuant to Idaho Code § 19–2601(4)[1] and directed the Department of Probation and Parole to submit a substance abuse analysis and report on White at the end of the 120 day period. On February 3, 1983, the trial court extended its retained jurisdiction over White for an additional 60 days. Following that order, the Department of Classification of the Board of Corrections submitted a report recommending that the trial court relinquish jurisdiction. White requested a hearing before the sentencing judge prior to the relinquishment of jurisdiction for the purpose of presenting a rebuttal to the Department of Classifications' recommen-

dation to the trial court. The trial judge, relying on earlier pronouncements of this court, observed that White had received a hearing before the Board of Corrections and was not entitled to a hearing before the court at this stage of the proceedings.[2] The trial court then relinquished jurisdiction without a hearing and the defendant was committed to the custody of the Idaho Board of Corrections for execution of judgment.

Defendant appeals from the sentence on the grounds that the trial court's failure to grant him a hearing at the time it relinquished jurisdiction constituted a denial of due process of law in violation of Idaho Constitution art. 1, § 13 and U.S. Constitution amend. XIV. By this appeal White asks this court to overrule *State v. Ditmars*, 98 Idaho 472, 567 P.2d 17 (1977) wherein we held that no hearing, under the rule requiring defendant's presence at imposition of sentence,[3] was necessary when at the expiration of the 120 day evaluation period, the trial court relinquished jurisdiction over the defendant and effectuated execution of sentence. White further requests that we extend the rationale of *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978) wherein we determined that a prisoner has a sufficient interest in the fairness of the evaluations by the North Idaho Correctional Institution (NICI) to invoke procedural due process requirements of the Fourteenth Amendment and Idaho Constitution art. 1, § 13. In *Wolfe, supra,* we stated:

> such defendant was convicted or sentenced may have expired; upon application of the state board of correction and for good cause shown, the court may extend the period under which it retains jurisdiction of the defendant an additional sixty (60) days.

---

1. 19–2601. Whenever any person shall have been convicted, or enter a plea of guilty, in any district court of the State of Idaho, of or to any crime against the laws of the state, except those of treason or murder, the court in its discretion, may:

....

(4) Suspend the execution of the judgment at any time during the first one hundred and twenty (120) days of a sentence to the custody of the state board of correction, during which time the court shall retain jurisdiction over the defendant which jurisdiction shall be entered on the order of commitment, and place the defendant on probation under such terms and conditions as it deems necessary and expedient, notwithstanding that the term of the court during which

2. Judge Rowett stated, "Clearly, the Court here is not required to have a hearing before relinquishing its retained jurisdiction. *State versus Lopez* [102 Id. 692, 638 P.2d 889, (1981)] ... was very clear on that point, as were the other cases that considered this matter...."

3. I.C.R. 32(a) and 43 entitle a defendant to be present at the time the court makes its final decision concerning the sentence.

Before a report is sent back to the sentencing judge (pursuant to the retained jurisdiction of I.C. § 19–2601), certain procedures must be followed. The prisoner must be given adequate notice before the hearing, including notice of the substance of all matters that will be considered. The prisoner must be given an opportunity to explain or rebut any testimony or recommendations. In addition, the prisoner must be free to call witnesses in his behalf from among the employees and other prisoners at NICI. This information should be included in the report sent back to the sentencing judge. *Id.* at 389, 582 P.2d 728.

Since we believe the procedural safeguards established in *Wolfe* adequately furnish a criminal defendant with due process, we decline the invitation to overrule *Ditmars, supra*. We therefore affirm the decision of the trial court.

DONALDSON, C.J., and SHEPARD and BAKES, JJ., concur.

BISTLINE, Justice, dissenting.

The majority's decision denies Mr. White due process protection by refusing to allow him the right of appearing before the district court to explain, clarify, add to, or refute that which has been put in the presentence report. Such a result is unfair and insensitive. In essence, Mr. White's view of the issues addressed by the presentence report will only be raised and discussed, if they are at all, as they are funneled through and reported by the correctional institution—the ultimate in trickle-down trumpery. Thus, if the institutional bureaucracy which produces pre-sentence reports either intentionally or inadvertently ignored, distorted, or manipulated Mr. White's evidence, he has no right or opportunity to respond.

The correct view is that which is set down by the United States Supreme Court in *United States v. Behrens*, 375 U.S. 162, 84 S.Ct. 295, 11 L.Ed.2d 224 (1963). In that case, the Supreme Court held that when a defendant is committed to the custody of the attorney general while a sentencing investigation is conducted, at the time when the commitment terminates, such defendant has a right to be present before the court and submit argument and evidence in his favor.

The reason for this rule is stated well by Justice Black, writing for the majority in *Behrens*:

It is only then that the judge's punishment is fixed. It is then that the right of the defendant to be afforded an opportunity to make a statement to the judge in his own behalf is of most importance. *Behrens, supra*, at 165, 84 S.Ct. at 297.

That same reasoning should apply in this case, particularly in light of the fact that the federal scheme for sentencing individuals is "closely analogous" to Idaho's scheme. *State v. Wolfe*, 99 Idaho 382, 391, 582 P.2d 728, 737 (1978) (Bakes, J., dissenting).

In *Wolfe*, Justice Bakes at length wrote a scholarly and persuasive dissenting opinion in an attempt to put the majority on track; he also pointed to the language of Justice Harlan in *Behrens*:

"The elementary right of a defendant to be present at the imposition of sentence and to speak in his own behalf, which is embodied in Rule 32(a) of the Federal Rules of Criminal Procedure, is not satisfied by allowing him to be present and speak at a prior stage of the proceedings which results in the deferment of the actual sentence. Even if he has spoken earlier, a defendant has no assurance that when the time comes for final sentence the district judge will remember the defendant's words in his absence and given them due weight. Moreover, only at the final sentencing can the defendant respond to a definitive decision of the judge." 375 U.S. at 167–68, 84 S.Ct. at 298.

*Wolfe, supra*, 99 Idaho at 392, 582 P.2d at 738.

Justice Bakes went on to write in his own language:

A trial court's decision to retain jurisdiction for 120 days is surely not a final decision whether to place the defendant

on probation. Rather, it is a decision to postpone a final decision concerning probation in order to permit further evaluation of the defendant by the Board of Corrections. In *Ditmars* and the instant case the decisions which had the effect of finally denying the defendants' requests for probation were the trial courts' decision made at the end of the periods of retained jurisdiction. In both this case and *Ditmars* the trial courts' decisions were based on reports submitted by the Board of Corrections. In my view the defendant's right to an opportunity to present evidence "which shows that he is a proper subject for probation, and which rebuts any adverse evidence before the court," *State v. Cornwall*, 95 Idaho [680] at 683, 518 P.2d [863] at 866, must include the right to a hearing at which he is given the opportunity to rebut or explain the board's report and recommendation. The majority opinion clearly depicts the importance many trial judges place on the board's report. The defendant's right to present evidence concerning his suitability for probation and to explain evidence already before the court, a right this Court has consistently upheld, is hollow indeed if the defendant is denied the right to rebut or explain the report which is likely to have the most significant effect on whether he will be ultimately granted probation.

. . . .

As a practical matter, the majority's decision may have nullified *Ditmars*. The majority concludes that the Board of Corrections must afford the defendant certain due process rights at the time the report and recommendations are prepared. If the defendant has a right to these procedural safeguards, then he must also have a right to judicial review of the procedures used to prepare his report, probably by the sentencing court. The majority recognizes this, *see ante* at 736, by referring to review under the Uniform Post Conviction Procedure Act, I.C. §§ 19–4901 to –4911. Thus, by this circuitous route, the majority now decides that a defendant can obtain the hearing and judicial review that the Court in *Ditmars* ruled he could not have. However, I take no consolation in the majority's *de facto* nullification of *Ditmars* because in doing so the majority compounds the steps necessary to arrive at procedural due process. Traditionally, when courts have determined that a protected interest is involved, they have required a hearing before the entity which is acting to deprive the defendant of that interest. For example, *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), a case heavily relied upon by the majority, involved two individuals who had been convicted of crimes, sentenced to the Iowa State Penitentiary, but later paroled. The Iowa Board of Parole revoked their parole without granting them a hearing. In both instances, the board's decision to revoke the parole was based upon reports submitted by parole officers. In *Morrissey* the United States Supreme Court held that due process required that the parolees be afforded a probable cause hearing and also a more expansive hearing before the Board of Parole, the entity which was empowered to revoke their parole. The Supreme Court did not require the parole officers, who submitted the reports forming the basis of the parole board's revocations, to conduct hearings in connection with the preparation of those reports. The majority opinion cites no authority for the proposition that the due process clause requires an agency which merely submits a report to afford the subject of the report a hearing in connection with the preparation of the report. It is obvious why such authority is lacking. In deciding a variety of matters courts often consider recommendations and evaluations prepared by various governmental agencies and other individuals. If a hearing on the matter is required, the logical and appropriate place to hold that hearing is before the court, the entity which makes the decision in the matter, and not before those who merely prepared reports and submit recommendations.

I cannot concur in the principle of due process enunciated by the majority that the Board of Corrections must afford the defendant an array of procedural due process rights in the preparation of an evaluative report simply because the report often has a significant effect on the court's decision. This misdirection in the development of procedural due process law is likely to lead to the situation in which the numerous individuals and agencies that submit reports for consideration by the courts are required in effect to hold a hearing in order to prepare such a report. Such situation would seriously cripple an agency's ability to prepare a useful report and may undermine the value of that report to the courts.

But I also object to the principle of law stated by the majority on still another and more fundamental ground. In effect this Court is saying in *Ditmars* that the courts are not obliged to afford the defendant procedural due process when the courts *decide* whether to place the defendant on probation following a period of retained jurisdiction or to order execution of the sentence. Yet, in virtually the same breath, the majority in this case holds that the Board of Corrections must afford the defendant procedural due process when it *prepares* the report for the court. These cases smack of a double standard of due process—one for the courts, and a more stringent standard for the Board of Corrections—and will only supply substance for the cynicism with which many law enforcement agencies already view court decisions.

As the majority opinion indicates, judges often place "a great deal of trust in the report and the recommendations contained therein." *Ante*, at 733. Since they will be receiving only the board's side of the evaluation of the defendant without allowing the defendant an opportunity to respond, the courts will tend simply to rubberstamp whatever the report recommends. Consequently, responsibility for making the decision will become increasingly blurred between the court, which has the lawful duty to make the decision, and the Board of Corrections, which as a practical matter will often make the decision. When a judge places a defendant in the custody of the Board of Corrections and retains jurisdiction for 120 days it is apparent that the judge believes that the defendant's conduct during those 120 days may well indicate that he is a good candidate for probation. The decision following the period of retained jurisdiction whether to grant the defendant's request for probation is of the utmost importance to the defendant. In my view the defendant, under our criminal justice system, has a right to have that decision made by the court, not the staff at the NICI. The duty to fix a defendant's sentence and to hold hearings in that regard belongs to the courts, and that duty should remain in the courts. The duty for evaluating and disciplining prisoners belongs to the Board of Corrections, and it should be allowed to perform that duty without the burden of performing the courts' hearing functions as well.

*Wolfe, supra*, 99 Idaho at 392–94, 582 P.2d at 738–40 (Bakes, J., dissenting).

Writing separately in *Wolfe*, I made clear my reason for concurring with the majority:

Where a majority of the court are presently of the view to adopt the due process procedures set forth in Justice Donaldson's opinion, I concur, doing so on the basis that what is tendered the 120 day inmate is far superior to that which he has enjoyed.

*Wolfe, supra*, at 390, 582 P.2d at 736. Following which I expressed my approval of that which Justice Bakes had written: "In time, however, I cannot help but think the full court will come around to the position espoused by Justice Bakes." With the appropriate time having arrived, and where the opportunity is now for the Court to swing to the views of Justice Bakes, defense counsel in this case, and defense counsel elsewhere, may well ask where is Justice Bakes today?

It is a dismal day for Idaho jurisprudence when a majority opinion scantily addresses and answers an issue the United States Supreme Court has decided otherwise. The *Behrens* case and its reasoning, as well as that which Justice Bakes provided in *Wolfe, supra,* deserve to be addressed—not ignored. And, if the arguments put forth by Justice Black and Justice Bakes are fairly considered, is not the conclusion inexorable that due process mandates that an individual have the right to address the sentencing judge before final sentencing is imposed? [1] So believing, I dissent.

---

1. Although this Court today says that due process does not require a defendant be granted the right to speak before final sentencing, this holding does not preclude trial judges in the interests of common sense and decency from affording such a right. Those district judges who read the foregoing passages authored by Justice Bakes may well feel compelled to do so—in which regard they will not be in error.